## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

JANE BAILEY,                )
      Plaintiff,        )
                    )
        v.             )      **Case No. 1:17-cv-625**
                    )
QUEST DIAGNOSTICS, INC.,  )
      Defendant.      )
                    )

### MEMORANDUM OPINION

The principle issue presented in this Family and Medical Leave Act ("FMLA")[1] and Virginia worker's compensation case is whether the summary judgment record reflects that there is a genuine issue of material fact as to whether defendant's stated reason for terminating plaintiff—that defendant believed plaintiff forged a doctor's note—is pretextual.

### I.[2]

Plaintiff, Jane Bailey, is a Virginia resident who was employed by defendant from June 25, 2012 through September 30, 2016 as a Medical Technologist II in the infectious diseases department. Defendant, Quest Diagnostics Inc. ("Quest"), is a Maryland corporation that operates clinical laboratories and tests patient samples provided by health care providers. In plaintiff's role as a Medical Technologist for defendant, plaintiff used pipettes to perform laboratory tests and reported test results at a computer.

When plaintiff first began working for defendant in 2012, plaintiff signed the Quest Diagnostics Integrity Commitment Pledge and other documents that acknowledged Quest's code

---

[1] 29 U.S.C. §§ 2601-2654.

[2] These facts are derived from defendant's list of undisputed facts that plaintiff does not oppose substantively. Plaintiff argues in its motion in limine that these facts should be excluded, but, as discussed *infra* Section II, that motion should be denied. Accordingly, the undisputed facts in defendant's statement are appropriately considered.

of conduct and emphasized the importance of integrity, honesty and cooperation among employees.[3]  Thereafter, in 2013, plaintiff was diagnosed with cancer.  Plaintiff requested FMLA leave to treat her cancer through defendant's third party leave administrator, CIGNA Leave Solutions ("CIGNA").  CIGNA approved plaintiff for intermittent FMLA leave from April 25, 2016 through October 13, 2016, and plaintiff successfully took FMLA leave, without interference, on several occasions during that time period.

On August 16, 2016, plaintiff informed her supervisor, Virginia Aleemi ("Aleemi"), that plaintiff hit her right hand on a supply table at work and was in pain.  Aleemi did not direct plaintiff to contact CIGNA about FMLA leave; instead, Aleemi filed a worker's compensation claim on behalf of defendant with Travelers' Insurance.  Aleemi also completed an incident report and sent plaintiff to Nurse Linda Yochem ("Yochem") at defendant's Chantilly facility. Yochem treated plaintiff with pain relievers, and thereafter, plaintiff returned to work.  Later that day, Dr. Carlos Martinez examined plaintiff's hand at INVOA Urgent Care in Centreville.  Dr. Martinez wrote a note instructing plaintiff to return to work the next day, on August 17, 2017, and directing plaintiff not to use her right hand at work.  When plaintiff returned to work on August 17, 2016, plaintiff provided Dr. Martinez's note to Aleemi.  Aleemi subsequently accommodated plaintiff's injury and assigned plaintiff work that plaintiff could complete using only her left hand.  Plaintiff admitted that although she could not fulfill her usual pipetting duties, plaintiff could still complete administrative tasks such as entering lab results into the computer.  *See* Pl. Dep. 25:8-11.

---

[3] Specifically, the Quest Diagnostics Integrity Commitment Pledge states, in relevant part: "Quest . . .  employees are expected to conduct themselves . . . according to the Company's values.  [W]hen an employee's conduct deviates from these standards . . . corrective action will be taken, up to and including termination of employment." Pl. Dep. Ex. 17.

On August 24, 2016, plaintiff returned to INVOA Urgent Care where doctors recommended that plaintiff see an orthopedic specialist and determined that plaintiff was "unable to return to work" until September 1, 2016. *See* Mason Dep. Ex. 2. Accordingly, plaintiff took medical leave on August 25, 26, 27, 30, and 31. *See* Mason Dep. Ex. 11.[4] On August 30, 2016, while plaintiff was on medical leave, plaintiff attended an appointment at Prince William Orthopedics ("PWO"). Bill Burk, a physician's assistant at PWO, diagnosed plaintiff with a contusion and related tendonitis in her right hand. Burk suggested that plaintiff could return to work immediately, but that plaintiff should continue to avoid using her right hand until September 30, 2016. *See* Bailey Dep. Ex. 7. Defendant agreed to accommodate plaintiff's restrictions, but asked that plaintiff provide a follow up note from her physician by October 1, 2016 with any updates on necessary accommodations.

Thereafter, on September 12, 2016, plaintiff attended a follow-up appointment with Dr. Zachary Weidner at PWO, during which Dr. Weidner prepared three notes related to plaintiff's hand injury. Plaintiff, in response to defendant's request for an updated note relating to accommodations, submitted a photocopy of one of Dr. Weidner's notes to Aleemi on September 21, 2016.[5] In the photocopied note, several words were scratched out and replaced with a handwritten annotation saying patient should have "no use" of the right hand. *See* Weidner Dep. Ex. 2. There were neither initials nor a date next to the handwritten annotation. When Aleemi received the photocopied note from plaintiff, Aleemi sent the note to Yochem and Bryan Mason ("Mason"), who were together responsible for managing occupational safety and health issues at

---

[4] Plaintiff had previously scheduled leave for August, 26-27, 2016, and it is unclear from the factual record whether plaintiff took medical leave on September 1, 2016. *See id.* Resolution of this question, however, is not material to the question at bar.

[5] Plaintiff did not submit the other two notes, one of which diagnosed the plaintiff with right wrist extensor tendonitis and the other prescribed occupational therapy. *See* Weidner Dep. Ex. 3.

defendant's Chantilly location. Given that the handwritten note contained no initials or date, Yochem and Mason believed the note was suspicious. Yochem then contacted the front office of PWO, and a representative from the front office faxed Yochem the front office's copies of the notes Dr. Weidner had prepared during plaintiff's September 12, 2016 appointment. There was a discrepancy between the photocopied note plaintiff submitted to defendant and the note that Yochem received from PWO's front office. Specifically, the note PWO faxed stated that plaintiff could do "minimal work" with her right hand and did not include the handwritten "no use" annotation. *See* Weidner Dep. Ex. 3.

Mason, believing the discrepancy between the two notes called into question plaintiff's integrity and honesty, referred the incident to defendant's Human Resources Service Center ("HRSC"). Mason included copies of the two notes and the physician's contact information in his report and stated:

> On further review of the note, I asked our nurse to contact the physician to discuss appropriate light duty and to concrete [sic] no use. The physician stated the 9/12 note did not contain the "no use" instruction, and faxed a copy of the note. It is clear that someone has scratched out the words "minimal work" on the original 9/12 note and has placed no use above the scratch out.

Mason. Dep. Ex. 12. HRSC assigned Beth Abrams ("Abrams"), an employee specialist based in North Carolina, to conduct the investigation into plaintiff. That same day, on September 21, 2016, defendant placed plaintiff on administrative leave pending the results of the investigation.

The next week, on September 27, 2016, Abrams and Aleemi contacted plaintiff and asked her about the annotation on the note plaintiff had submitted. Initially, plaintiff suggested that she received the annotated note from PWO at her September 12, 2016 appointment and that defendant could call the office to verify that fact. When Abrams told plaintiff the office had already been contacted and that there was a discrepancy between the notes, plaintiff refused to

speak further.[6]  Believing that plaintiff had violated defendant's integrity and honesty policies by altering the doctor's note, Aleemi completed a termination recommendation form for plaintiff after the phone conference with plaintiff.  Abrams, and several other HRSC personnel, agreed with that recommendation.  Accordingly, on September 30, 2016, defendant terminated plaintiff.

After defendant notified plaintiff of her termination, plaintiff informed defendant that she had obtained Dr. Weidner's initials on the annotated note.   Plaintiff, however, never provided an initialed note to defendant.   On October 10, 2016, approximately two weeks after plaintiff's termination, Dr. Weidner wrote a letter to defendant stating:

> I originally wrote a note that [plaintiff] could return to work with minimal use of the right hand but I subsequently changed the note to state that [plaintiff] is to have no use of the right hand. At the time of this changed I scratched out a portion of the note and put my initials next to the error. The patient did not make any alterations to this work note.

Weidner Dep. Ex. 1 at 31.  Dr. Weidner also requested that defendant restore plaintiff to her prior position, but plaintiff was not rehired.   Thereafter, on February 17, 2017, Dr. Weidner wrote to defendant again, stating:

> I would like to again reiterate that I altered the original work note for this patient and that the patient never altered any note regarding her work restrictions. On 9/12/16 I wrote a note saying she was to have minimal use of her right hand after her injury. The patient subsequently returned to the office saying that the pain was too much so I scratched out that portion of the note and wrote "no use" of the right hand. In hindsight I appear to have been incorrect, I did not initial the note when I made this change.

*Id.* at 36.

Plaintiff filed the complaint in this action on May 31, 2017.  The complaint alleges three claims: (i) that defendant terminated plaintiff in retaliation for her FMLA leave requests; (ii) that

---

[6] Plaintiff does not dispute the substance of this fact.  Instead, plaintiff argues that plaintiff's response to Abrams was based on "false double hearsay" and thus would not be admissible at trial.  Abrams's statements about contacting the doctor's office do not constitute hearsay because the statements are not being used for the truth of the matter asserted.  *See* Rule 801(c)(2), Fed. R. Evid.  Rather, the statements in this context are being used to demonstrate the effect on plaintiff as the listener.  The important fact here is that plaintiff, when confronted with evidence from the doctor's office, refused to speak or provide any further explanation for the discrepancies in the notes.

defendant interfered with plaintiff's FMLA entitlements; and (iii) that defendant terminated plaintiff for filing a worker's compensation claim in violation of Virginia Code § 65.2-308.

After plaintiff filed the complaint, a Rule 16(b) Scheduling Order issued setting a schedule for discovery. On August 21, 2017, the parties exchanged discovery responses. Defendant served detailed and responsive answers to plaintiff's interrogatories, but the answers were signed by defendant's counsel, not by a representative of defendant. From September 8 to September 15, 2017, plaintiff took five depositions of defendant's employees and used defendant's interrogatory answers in at least one of those depositions. Based on information learned in discovery, defendant made minor changes to its interrogatory answers and served supplemental responses on September 22, 2017, the final date of discovery. Defendant also produced two additional documents on September 22, 2017, when defendant realized that a photocopy error in a previous production had redacted portions of those documents.

On October 6, 2017, after the close of discovery, defendant filed the motion for summary judgment at issue here. Defendant argues plaintiff has failed to establish an FMLA retaliation claim because: (i) plaintiff never requested FMLA leave for her hand injury; and (ii) plaintiff was terminated because defendant believed plaintiff forged her doctor's note, not because of any FMLA-protected activity. With respect to the FMLA interference claim, defendant contends that: (i) plaintiff has failed to show she was entitled to FMLA leave for her hand injury; (ii) defendant did not interfere with any of plaintiff's FMLA entitlements; and (iii) plaintiff was not harmed by any interference with her FMLA entitlements. Finally, defendant argues it is entitled to summary judgment on plaintiff's worker's compensation claim because plaintiff has failed to adduce evidence that plaintiff was terminated solely as a result of her worker's compensation claim. Plaintiff opposes defendant's motion, contending that (i) plaintiff was entitled to FMLA

leave for her hand injury; and (ii) defendant terminated plaintiff because of her leave requests. Moreover, plaintiff argues that defendant interfered with plaintiff's FMLA entitlements by discharging her on the basis of her leave requests, mischaracterizing her leave, and unlawfully requesting medical certifications from plaintiff.

On the same day defendant filed its motion for summary judgment, October 6, 2017, plaintiff, without attempting to confer with defendant, filed a motion to strike the facts contained in defendant's motion for summary judgment. Plaintiff contends that because defendant failed to serve its response to interrogatories with verification from defendant's representative, any facts that should have been revealed in those interrogatories should be excluded from the record. After plaintiff filed the motion to strike defendant's undisputed facts, defendant obtained the appropriate verifications and served the verifications on plaintiff's counsel on October 13, 2017.

## II.

Before resolution of defendant's summary judgment motion, it is necessary to determine whether defendant's statement of undisputed facts should be excluded. Plaintiff's motion to strike the undisputed facts in defendant's motion for summary judgment plainly fails. To begin with, plaintiff was not harmed in any way by defendant's failure to verify its interrogatory responses. Defendant timely served responses to plaintiff's interrogatories, and plaintiff took depositions of five of defendant's witnesses. Each of these witnesses was timely disclosed in defendant's Rule 26 disclosures and identified in defendant's interrogatory responses. In fact, plaintiff brought defendant's interrogatory responses to at least one of the depositions and used those responses to guide its questioning. Defendant also provided supplemental revised responses pursuant to Rule 26(e), Fed. R. Civ. P.

Moreover, plaintiff made no effort to meet and confer prior to filing its motion to strike as required by Local Rule 37(e) (providing that no motion "concerning discovery matters" may be filed until counsel have conferred and that "the Court will not consider any such motion unless accompanied by a statement of counsel that a good faith effort has been made to resolve the issue").  Had plaintiff made this effort, defendant would certainly have cured the oversight.  Indeed, plaintiff filed its motion to strike on October 6, 2017, and defendant served updated interrogatories with proper verification on October 13, 2017, effectively curing its initial oversight.

Even assuming it were proper to exclude the now-verified interrogatory responses, it would be inappropriate to strike the undisputed facts in defendant's summary judgment motion, as defendant's motion for summary judgment does not even cite defendant's interrogatory responses.  Instead, the motion cites to deposition testimony and authenticated exhibits, each of which were accessible to plaintiff well before the close of discovery.

In sum, plaintiff's motion in limine must be denied because plaintiff was not prejudiced by defendant's failure to verify its interrogatory responses, and defendant has now cured its oversight by properly verifying the responses.

## III.

The standard of review on motions for summary judgment is too well-settled to warrant extensive discussion.  Under Rule 56, Fed. R. Civ. P., summary judgment is appropriate only where there is "no genuine dispute as to any material fact" such that the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute exists if "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In evaluating

this question, courts must "view the evidence in the light most favorable to . . . the nonmovant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The nonmovant, however, cannot rely on "mere allegations;" rather, the nonmovant "must set forth specific facts that go beyond the mere existence of a scintilla of evidence." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (internal quotations and citations omitted).

## IV.

The FMLA makes it unlawful for "any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To establish an FMLA retaliation claim, a plaintiff must show "that [she] engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (internal quotations and citations omitted).

The *McDonnell Douglas*[7] burden-shifting framework also applies to FMLA retaliation claims. *Sharif*, 841 F.3d at 203. Under the *McDonnell Douglas* framework, once a plaintiff has made out a prima facie case of FMLA retaliation, the burden of production shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason for plaintiff's termination. If defendant meets this burden of production, then the burden shifts back to the plaintiff to demonstrate that the defendant's stated reasons for the adverse action are pretextual. The plaintiff can satisfy this burden by "showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation." *Id.* As described below, plaintiff has established a prima facie FMLA retaliation claim. And although defendant has produced a legitimate non-discriminatory reason for plaintiff's termination,

---

[7] 411 U.S. 792 (1974).

plaintiff has adduced evidence showing that defendant's reason is pretextual. Accordingly, defendant is not entitled to summary judgment on plaintiff's FMLA retaliation claim.

**A.**

With respect to the first element of plaintiff's prima facie retaliation case, the undisputed factual record discloses that there is a genuine dispute of triable fact as to whether plaintiff engaged in FMLA-protected activity. Specifically, the undisputed record reflects that plaintiff requested and took at least three days of medical leave in connection with her hand injury,[8] and that plaintiff's supervisors were aware of the nature of plaintiff's request for leave and the duration of that leave. *See* Mason Dep. Ex. 11. Defendant's argument that plaintiff did not formally request FMLA leave does not alter this result. An employee need not expressly mention the FMLA when requesting or taking leave to satisfy the initial burden of demonstrating protected activity under the FMLA. *See Dotson v. Pfizer Inc.*, 558 F.3d 284, 293 (4th Cir. 2009) ("The FMLA does not require plaintiff to specifically invoke its protections to benefit from it.").[9] In this regard, the Fourth Circuit has made clear that it is the employer's burden "to gather additional information and determine if the FMLA is actually implicated." *Krenzke v. Alexandria Motor Cars, Inc.*, 289 F. App'x 629, 632 (4th Cir. 2008). The undisputed factual record here discloses that plaintiff satisfied this burden by notifying her supervisors that she suffered a hand contusion and would take leave because of that contusion. This notice is

---

[8] Plaintiff took medical leave that she had not previously scheduled on August 25, 30 and 31. *See* Mason Dep. Ex. 11.

[9] *See also* 29 C.F.R. § 825.302(b) ("[T]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.").

sufficient to establish that plaintiff engaged in protected activity by requesting and taking FMLA leave, even if plaintiff did not expressly mention the FMLA in doing so.[10]

Plaintiff has also clearly satisfied the second element of her prima facie case. Defendant terminated plaintiff on September 30, 2016, and in so doing, defendant took adverse action against plaintiff. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (finding that termination is adverse action under the FMLA).

Finally, plaintiff has adduced evidence demonstrating a triable issue of fact with respect to the third, causation element of her prima facie case. Specifically, the short span of time between plaintiff's request for medical leave for her hand injury and plaintiff's termination is sufficient to support plaintiff's prima facie case. The Fourth Circuit has recognized that "close temporal proximity between activity protected by the [FMLA] and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogation on other grounds recognized by Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 299 (4th Cir. 2015)). In this case, plaintiff requested and took medical leave just one month before she was terminated on September 30, 2016. This close temporal proximity satisfies plaintiff's burden of making a prima facie case of causality. *See Yashenko*, 446 F.3d at 551 (finding that plaintiff satisfied his prima facie burden of demonstrating causation where the plaintiff took leave two months before the plaintiff was terminated).[11]

---

[10] Defendant also argues that plaintiff was not entitled to FMLA leave and thus could not have engaged in protected activity. Defendant, however, points to no Fourth Circuit case law establishing that entitlement to FMLA leave is a requirement for protected activity. Moreover, as described *infra* Section V, plaintiff has adduced evidence reflecting a genuine issue of material fact as to whether plaintiff was entitled to FMLA leave. Accordingly, even were entitlement to FMLA leave a requirement for protected activity, plaintiff here would satisfy that requirement.

[11] Defendant argues that plaintiff admitted that she was terminated because of defendant's belief that plaintiff forged her note and that admission ends the inquiry into whether a genuine dispute exists as to the cause of plaintiff's termination. But it is not clear from the record that plaintiff admitted that defendant truly held that belief and that

Because plaintiff has demonstrated a triable issue of fact as to whether plaintiff was terminated because of her medical leave, plaintiff has satisfied her prima facie burden of establishing an FMLA retaliation claim.

**B.**

Plaintiff has also adduced evidence from which a reasonable juror could conclude that defendant's stated reason for plaintiff's termination is pretextual. To begin with, defendant has proffered a legitimate, non-retaliatory reason for terminating plaintiff, namely that defendant believed that plaintiff altered the doctor's note plaintiff submitted to support the accommodations she sought at work. Accordingly, the burden shifts to plaintiff to point to evidence in the record suggesting that defendant's non-retaliatory reason is pretextual.

Plaintiff satisfies this burden by identifying three sets of facts in the summary judgment record: (i) Mason made several statements prior to receiving the doctor's note that suggest his belief that plaintiff was faking her injury was the real reason for his HRSC termination report; (ii) defendant failed to contact Dr. Weidner himself before terminating plaintiff; and (iii) defendant did not give plaintiff the opportunity to provide an initialed note and did not rehire her after Dr. Weidner admitted to altering the note.

To begin with, evidence in the record reflects that Mason's doubt about plaintiff's initial injury may have prompted his termination report, and not any alleged forgery of the doctor's note. Specifically, Megan Starolis ("Starolis"), a Director at Quest, wrote Mason an email on August 17, 2016, with the subject "Injury," which said:

---

defendant's belief was the real reason for plaintiff's termination. Rather, plaintiff's deposition reflects that plaintiff simply responded "yes" to a series of questions related to what defendant told plaintiff about her termination. *See* Pl. Dep. 159:1-160:22. Plaintiff's admission about the reasons defendant gave when defendant terminated plaintiff does not constitute an admission that the note was the actual reason for plaintiff's termination. Indeed, in plaintiff's memorandum in opposition to defendant's motion for summary judgment, plaintiff argues, at length, that defendant's proffered reason for terminating plaintiff is pretextual. *See* Pl. Opp. at 23-29.

> On the day that [plaintiff] injured her hand, [Aleemi] had just announced at a huddle that the productivity goals had been revised . . . [Plaintiff] was able to check her productivity numbers and she was approximately 50% lower than the target, [Aleemi] had announced that she would be meeting personally with all technologists not meeting the goal to establish an improvement plan. [Plaintiff] subsequently injured her hand that she uses for pipetting and loading.

Starolis Dep. Ex. 1. Mason subsequently forwarded the email to Yochem and instructed Yochem to keep the email with plaintiff's file. *Id.* Later, on August 30, 2016, Mason wrote an email to Aleemi stating that as far as he knew, plaintiff was making up her hand injury. *See* Aleemi Dep. Ex. 12. When, several weeks later, Mason received the annotated doctor's note from plaintiff and submitted a termination report to HRSC, Mason reiterated that he "had doubts concerning the original incident." Mason. Dep. Ex. 12. Mason also mischaracterized the nature of his investigation in the report to HRSC; Mason wrote that "the *physician* stated the 9/12 note did not contain the "no use" instruction"[12] when in reality, neither he nor Yochem ever spoke to Dr. Weidner. A reasonable juror could conclude from this evidence that Mason's personal belief that plaintiff was taking medical leave for a fake injury was the true motivation for his termination report, not any alleged forgery of the doctor's note.

The nature of the HRSC investigation also creates a genuine dispute of material fact as to whether defendant's proferred reason for plaintiff's termination is pretextual. The Fourth Circuit has made clear "evidence of an obviously inadequate investigation into the employee's misconduct [can] tend to show that claimed employee's conduct was actually pretext for prohibited animus." *Villa v. Cavamezze Grill, LLC,* 858 F.3d 896, 905 (4th Cir. 2017) (internal citations omitted). In this regard, the key inquiry is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Sharif*, 841 F.3d at 206 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). Here, defendant

---

[12] Mason. Dep. Ex. 12 (emphasis added).

gathered evidence from the doctor's front office but never spoke to Dr. Weidner himself. Even though Dr. Weidner testified that it was reasonable for defendant to rely on conversations with his front office in evaluating the notes,[13] Yochem testified that if she had known the investigation would result in a termination decision, she would have wanted to speak to Dr. Weidner himself. *See* Yochem Dep. 103:2-19. Accordingly, there is evidence from which a reasonable juror could find that defendant's investigation was not reasonably informed.

Finally, defendant failed to explain why, when faced with evidence that plaintiff had not forged the doctor's note, defendant persisted in its termination decision. Notably, on the day plaintiff was terminated, plaintiff told Aleemi and Abrams that Dr. Weidner had offered to initial the note, but Aleemi and Abrams denied plaintiff the opportunity to correct the misunderstanding. And when Dr. Weidner himself wrote to defendant ten days after plaintiff's termination to affirm that he annotated the note, defendant did not reconsider its termination decision. Defendant offers no explanation for why it failed to reconsider its termination decision when faced with evidence that the alleged reason for that decision had no basis in fact. A reasonable juror could thus conclude that defendant's proffered reason for terminating plaintiff is pretext for prohibited retaliation.

Defendant relies on *Villa* to argue that the fact that defendant's termination decision ultimately proved incorrect is immaterial. To be sure, the Fourth Circuit has made clear that "[w]hether the termination decision 'was wise, fair, or even correct' is immaterial.'" *Villa*, 858 F.3d at 901 (quoting *DeJarnette v. Corning*, 133 F.3d 293, 299 (4th Cir. 1998)). But importantly, this is only so if the proffered reason "was truly the reason for the plaintiff's termination." *DeJarnette*, 133 F.3d at 299. *Villa* is inapposite because the plaintiff in that case

---

[13] *See* Weidner Dep. 35:2-22.

conceded that the defendant's stated reason was "truly the reason for plaintiff's termination." Here, by contrast, plaintiff argues that the fact that defendant persisted in terminating plaintiff when faced with evidence that plaintiff did not actually forge the doctor's note establishes a genuine issue of material fact as to whether defendant's explanation was truly the reason for plaintiff's termination. Accordingly, *Villa* does not compel a contrary conclusion.

In sum, although defendant has successfully proffered a legitimate, non-retaliatory reason for terminating plaintiff, plaintiff has adduced record evidence disclosing that a genuine issue of material fact exists as to whether this proffered reason is pretextual. Accordingly, defendant is not entitled to judgment as a matter of law on plaintiff's FMLA retaliation claim.

## V.

The FMLA also prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). A plaintiff establishes a claim of FMLA interference if the plaintiff can prove that "(1) she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Although there is a genuine issue of material fact as to the first and second elements of plaintiff's claim, plaintiff has failed to adduce evidence that plaintiff was harmed by interference with her FMLA entitlements. Accordingly, as described below, defendant is entitled to judgment as a matter of law on plaintiff's FMLA interference claim.

Plaintiff has demonstrated a genuine issue of triable fact as to whether plaintiff is entitled to FMLA leave for her hand injury. A plaintiff is entitled to an FMLA benefit if: (i) her condition is "a serious health condition that makes the employee unable to perform the functions

of the position of such employee;"[14] and (ii) the plaintiff provides sufficient notice to her employer of her entitlement. *See Rhoads v. FDIC*, 257 F.3d 373, 381-84 (4th Cir. 2001) (noting that an employee is "mandated to provide notice to her employer when she requires FMLA leave" and that plaintiff must also "prove that she was afflicted with an FMLA-qualifying condition"). To begin with, plaintiff has adduced evidence demonstrating her hand injury was a serious health condition. The FMLA defines a "serious health condition" as an illness that requires either "inpatient care"[15] or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). And, pursuant to DOL regulations, "[c]ontinuing treatment by a health care provider" involves either episodic incapacity[16] or a period of continuous incapacity of more than three consecutive, full calendar days. *See* 29 C.F.R. § 825.115(a)-(c). The undisputed factual record here reflects that, on August 24, 2016, doctors at the INOVA Urgent Care estimated that plaintiff would be unable to return to work until September 1, 2016. *See* Mason Dep. Ex. 2. Moreover, an email from Mason on August 26, 2016 discloses that plaintiff took medical leave from August 25, 2016 through September 1, 2016, a period of more than three consecutive days, as a result of this doctor's note. *See* Mason Dep. Ex. 11. Accordingly, there is a genuine dispute as to whether plaintiff's hand injury constituted a "serious health condition," requiring continuing treatment by a health care provider.

Further, plaintiff provided sufficient notice to her employer of her entitlement to FMLA leave. As described *supra* Section IV.A, to satisfy the employee's initial burden of triggering the FMLA, an employee need not expressly mention the FMLA; she "need only inform her

---

[14] 29 U.S.C. § 2612(a)(1)(D).

[15] Plaintiff does not contend that her hand injury required inpatient treatment, so it is appropriate to consider only whether plaintiff has shown a health condition requiring continuing treatment by a health care provider.

[16] DOL regulations define "incapacity" as an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

employer that she needs leave from work for a medical reason." *Krenzke*, 289 F. App'x at 632. Mason's August 26 email makes clear that plaintiff's supervisors understood plaintiff was requesting leave from work for a medical reason. *See* Mason Dep. Ex. 11. Although plaintiff did not follow the usual process of requesting FMLA leave via CIGNA, plaintiff only failed to do so because Aleemi directed her through a different process for her worker's compensation claim. Accordingly, plaintiff sufficiently notified defendant of her request for leave.

Plaintiff has also demonstrated a triable issue of fact with respect to the second prong of plaintiff's interference claim because plaintiff has adduced evidence from which a reasonable juror could conclude that defendant interfered with plaintiff's leave entitlement by mischaracterizing her FMLA leave as personal leave. The Ninth Circuit and some district courts have recognized that mischaracterizing an eligible employee's FMLA leave can qualify as interference. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003) ("Under DOL regulations, the mischaracterization of Liu's FMLA leave as personal leave qualifies as 'interference' with her leave.").[17] Here, the undisputed factual record reflects that plaintiff took leave from August 25 to September 1, following her hand injury, and that defendant characterized that leave as personal medical leave, not FMLA leave. *See* Mason Dep. Ex. 11. Moreover, although the employer bears the burden of assessing whether a new request for leave constitutes FMLA leave,[18] defendant did not inquire further with respect to plaintiff's request for leave on these days. Indeed, Aleemi deliberately did not direct plaintiff to request FMLA leave via CIGNA because plaintiff's injury took place at work. These facts, interpreted in the light

---

[17] *See also Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 697 (E.D. Ky. 2014); *Hagler v. True Mfg., Inc.*, 2013 WL 3243374, at *8-11 (E.D. Mo. 2013).

[18] The Fourth Circuit has made clear that it is the employer's burden "to gather additional information and determine if the FMLA is actually implicated." *Krenzke*, 289 F. App'x at 632.

most favorable to plaintiff, create a genuine issue of triable fact as to whether defendant interfered with plaintiff's FMLA leave by mischaracterizing plaintiff's leave as personal leave.

Plaintiff also contends that defendant interfered with her leave entitlement by: (i) discouraging or chilling plaintiff from exercising her FMLA rights; (ii) using unpaid leave as a factor in an employment decision; (iii) using performance issues in assessing the need for potential leave; (iv) failing to provide adequate notice of FMLA procedures; and (v) failing to advise plaintiff that her medical certification was insufficient or providing the opportunity to cure the certification; and (vi) failing to advise plaintiff of the consequences of not providing a certification. None of these arguments demonstrates interference by defendant.

To begin with, there is no evidence that plaintiff was discouraged from taking FMLA leave. The undisputed factual record reflects that defendant allowed plaintiff to attend each of her medical appointments for her hand injury and granted her other documented requests for leave. Whenever plaintiff requested leave for her cancer treatment, defendant granted her requests. In fact, plaintiff admits that she took her FMLA leave without incident and without any adverse action from defendant for three years. *See* Pl. Dep. 39:2-12, 66:5-68:18. Accordingly, the undisputed factual record reflects that defendant did not interfere with plaintiff's FMLA leave by discouraging plaintiff from exercising her rights. *See Adams*, 789 F.3d at 427 (noting that plaintiff was not discouraged from taking FMLA leave because "[plaintiff] has not suggested that [defendant] denied him any FMLA leave he requested").

Moreover, defendant did not interfere with plaintiff's leave by using unpaid leave as a factor in plaintiff's termination. Plaintiff relies on *Snelling v. Clarian Health Partners, Inc.*, 184 F. Supp. 2d 838 (S.D. Ind. 2002), for the proposition that the use of her FMLA leave as a factor in defendant's employment decision constituted prohibited interference. Yet the use of FMLA

leave as a factor in an employment decision is a violation of proscriptive provisions of the FMLA that protect employees from discrimination or retaliation. *See Yashenko*, 446 F.3d at 546. By contrast, an interference claims requires a violation of substantive rights provided for in the FMLA, *i.e.*, the right to take a certain amount of leave or the right "to be restored by the employer to the position of employment held by the employee when leave commenced." *Id* (quoting 29 U.S.C. § 2614(a)(1)(A)-(B)). Neither of these substantive violations occurred here; it is undisputed that all of plaintiff's leave requests were approved and plaintiff was restored to her role as Medical Technologist upon her return from leave on or around September 1, 2016. Put simply, plaintiff's argument that defendant interfered with plaintiff's FMLA leave by using that leave as a factor in defendant's employment decision supports plaintiff's retaliation claim, not her interference claim.

There is also no evidence in the undisputed factual record to suggest defendant used performance issues in assessing plaintiff's need for leave. Plaintiff relies on an email from Starolis to Mason in which Starolis informed Mason that plaintiff injured her hand immediately after the full team had a performance conversation with Aleemi. *See* Starolis Dep. Ex. 1. But, the record contains no evidence that defendant used that information in deciding whether to grant plaintiff leave. And, notably, plaintiff was granted all the leave she requested.

With respect to notice of defendant's FMLA procedures, plaintiff's claim also falls far short of demonstrating interference. The undisputed factual record discloses that plaintiff had previously requested, and been approved for, FMLA leave on several occasions for her cancer. Plaintiff was plainly aware of how to request leave according to defendant's procedures.

Nor do plaintiff's arguments regarding medical certification requirements establish interference by defendant. To begin, defendant never requested a medical certification in

support of plaintiff's leave request.  Department of Labor ("DOL") regulations only apply to certifications in connection with a request for leave.  *See* 29 C.F.R. § 825.306.[19]  The note at issue here was not prepared in connection with a request for leave; instead, the undisputed factual record reflects that defendant asked plaintiff for the note to update defendant on any accommodations plaintiff would require while at work.  In short, defendant requested the note to continue to accommodate plaintiff's physical limitations in assigning her workload, not to support plaintiff's request for leave.  Because defendant never requested that plaintiff provide a medical certification in support of a leave request, plaintiff's arguments about interference related to certifications must fail.

Given that the only interference with plaintiff's FMLA leave supported by the factual record is defendant's mischaracterization of plaintiff's leave, plaintiff must show that she suffered harm as a result of that interference to satisfy the final element of an FMLA interference claim.  Plaintiff has not done so here, as Supreme Court has made clear that "[t]he employer is liable only for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief, including employment, reinstatement, and promotion."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 82 (2002) (internal citations omitted).  The undisputed record here discloses that plaintiff did not lose any compensation or benefits or sustain any monetary losses owing to the mischaracterization of her leave.  Importantly, because the FMLA entitles an employee only to

---

[19] Specifically, the regulations provide, in relevant part:

> When leave is taken because of an employee's own serious health condition, or the serious health condition of a family member, an employer may require an employee to obtain a medical certification from a health care provider . . . .

29 C.F.R. § 825.306.  The regulations plainly address a medical certification in connection with a request for leave, not a request for accommodation.

*unpaid* leave,[20] plaintiff would not have been entitled to compensation for her time off even were her leave properly characterized. Put simply, plaintiff was not harmed by the mischaracterization of her leave because defendant would not have compensated plaintiff for her days off regardless of how those days were characterized.

In sum, the undisputed record contains no evidence that plaintiff was harmed by any of defendant's interference with her FMLA leave. Accordingly, plaintiff cannot establish an FMLA interference claim, and defendant is entitled to judgment as a matter of law on this claim.

## VI.

To prevail on a worker's compensation retaliation claim in Virginia,[21] a plaintiff must prove that the employer terminated the plaintiff "solely because the [plaintiff] intends to file or has filed a [worker's compensation claim]." Va. Code § 65.2-308.[22] Plaintiff has failed to adduce evidence showing she was terminated solely because of her worker's compensation claim. Accordingly, defendant is entitled to judgment as a matter of law on this claim.

To support plaintiff's worker's compensation claim, plaintiff relies on the temporal proximity between the worker's compensation claim and plaintiff's termination. But the Virginia Supreme Court has made clear that closeness in time between an employee's worker's compensation claim and the employee's termination is not sufficient to establish a prima facie violation of Virginia Code § 65.2-308. *See Jordan*, 253 Va. at 193. Accordingly, plaintiff's worker's compensation claim cannot survive on the basis of temporal proximity alone.

Nor is plaintiff's argument with respect to pretext a bar to summary judgment. Evidence of pretext reveals, at most, that the defendant's proffered reason for terminating the plaintiff is

---

[20] *See* 29 U.S.C. § 2612(c).

[21] The parties apply Virginia law in this case, presumably because the injury occurred in Virginia and the claim was filed in Virginia.

[22] *See Jordan v. Clay's Rest Home, Inc.*, 253 Va. 185, 193 (1997).

not the real reason for the termination; it does not identify the true reason for termination among other alternate explanations. Indeed, plaintiff here uses the same evidence of pretext to argue that her termination was the result of both her FMLA leave and her worker's compensation claim. But a mixed motive termination will not support a worker's compensation claim because the statute requires that the worker's compensation claim be the sole reason for the termination. *See O'Connell v. Isocor Corp.*, 56 F. Supp. 2d 649, 655 (E.D. Va. 1999) ("Where the worker's compensation claim is simply a factor, plaintiff does not make out a cause of action."). Accordingly, defendant is entitled to summary judgment on plaintiff's worker's compensation claim.[23]

## VII.

In sum, plaintiff has adduced record evidence reflecting that there is a genuine issue of material fact as to whether defendant's stated reason for terminating plaintiff is pretext for FMLA retaliation. On the other hand, plaintiff has failed to adduce evidence suggesting that defendant's interference with plaintiff's FMLA entitlements caused plaintiff harm or that plaintiff was terminated solely because of her worker's compensation claim. Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's FMLA interference claim and worker's compensation claim, but summary judgment is not appropriate with respect to plaintiff's FMLA retaliation claim.

An appropriate order will issue.

Alexandria, Virginia
December 19, 2017

/s/
T. S. Ellis, III
United States District Judge

---

[23] The complaint also requests punitive damages under Virginia's worker compensation statute, but plaintiff concedes in her opposition to summary judgment that punitive damages are not appropriate in this case. *See* Pl. Opp. at 30.